**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JONATHAN EVERETT WARNER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 25-CV-0019-GKF-JFJ** |
| | ) | |
| DETECTIVE AMY M. HALL, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**OPINION AND ORDER**</u>

Plaintiff Jonathan Everett Warner ("Warner"), a self-represented prisoner, brings this action under 42 U.S.C. § 1983, claiming several local officials and municipalities violated his constitutional rights when they arrested him in Broken Arrow, Oklahoma. *See* Doc. 57. This matter is before the Court on motions to dismiss filed by the City of Tulsa (Doc. 61) and the City of Broken Arrow (Doc. 62) (collectively, the "Cities"). The Cities contend Warner failed to state a claim against them upon which relief may be granted. *See* Docs. 61 and 62. Warner filed a response in opposition (Doc. 75), and each City filed a Reply (*see* Docs. 82 and 83). For the following reasons, the Court grants both motions to dismiss.

**BACKGROUND**

Warner initiated this action in the U.S. District Court for the Eastern District of Oklahoma[1] on December 19, 2024, and filed an amended complaint on November 12, 2025. Doc. 1; Doc. 56 at 2, n. 1;[2] Doc. 57. The amended complaint advances numerous claims against the following defendants: K9 Officer Jeff Maxey, Detective Adam Derycke, Detective Brad Sharpe, Sergeant Eric Spradlin, Sergeant Gene Watkins, Officer Jacob Drain, Officer Jefferson Reynolds, Detective

---

[1]  The Eastern District transferred the action to this district on January 7, 2025.

[2]  The Court's citations refer to the CM/ECF header pagination.

Amy M. Hall, the City of Tulsa, the City of Broken Arrow, and Lance Eberle. *See* Doc. 57. Warner's claims arise out of his arrest on December 23, 2022, in Broken Arrow, Oklahoma. *Id.* at 8. Warner generally alleges the officers effectuating his arrest used excessive force and failed to intervene to stop the on-going excessive force, thereby violating his Fourth Amendment and Fourteenth Amendment rights. *See* Doc. 57. Critical to the instant motions before the Court, Warner also advances negligent use of excessive force, negligent intentional infliction of emotional distress and deliberate indifference claims against each City under a theory of municipal liability. *See* Doc. 57 at 59-71. As noted, the Cities move to dismiss the amended complaint for failing to state a claim against them upon which relief may be granted. Docs. 61 and 62.

### STANDARD OF REVIEW

Dismissal of claims under Rule 12(b)(6) is appropriate if the facts alleged in the complaint fail to state a claim on which relief may be granted. To withstand a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish plaintiff's claim. *Id.* at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555. When considering the sufficiency of the complaint, a court must accept as true all the well-pleaded factual allegations and construe them in the plaintiff's favor. *Id.* But the court may disregard legal conclusions or conclusory statements devoid of factual support. *Id.*; *Iqbal*, 556 U.S. at 678.

Further, when a plaintiff appears without counsel, the Court must liberally construe the complaint. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But even self-represented litigants bear the burden to "alleg[e] sufficient facts on which a recognized legal claim could be based." *Id.* And the rule of liberal construction neither permits nor requires a court to assume the role of the unrepresented litigant's advocate by "supply[ing] additional factual allegations to round out a plaintiff's complaint or construct[ing] a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

At the motion-to-dismiss stage, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting *Bell Atl. Corp.*, 550 U.S. at 556). Nonetheless, dismissal is appropriate "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp.*, 550 U.S. at 558. The Court now turns to Warner's amended complaint and the Cities' motions to dismiss.

## ANALYSIS

To hold a municipality liable under § 1983, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted). "Respondeat superior or vicarious liability will not attach under [Section] 1983." *City of Canton*, 489 U.S. at 385. A municipal policy or custom takes one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking

3

authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Thao v. Grady Cnty. Criminal Justice Auth.*, 159 F.4th 1214, 1227 (10th Cir. 2025) (quoting *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019)). "After establishing such a policy or custom, a plaintiff must demonstrate the causation element, that is, 'a direct causal link between the policy or custom and the injury alleged.'" *Thao*, 159 F.4th at 1227 (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). "A plaintiff must include 'factual allegations sufficient to support a plausible inference' that a policy [or custom] caused his injuries." *Manning v. City of Tulsa,* 170 F.4th 1287, 1300 (10th Cir. 2026) (quoting *Pyle v. Woods,* 874 F.3d 1257, 1266 (10th Cir. 2017)). And the absence of a constitutional violation by the officers of a city precludes a finding of liability against the city itself. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). With this legal background, the Court considers Warner's municipal liability claims.

### I.    Warner's claims against the City of Tulsa

The Court agrees Warner fails to state plausible municipal liability claims against the City of Tulsa. As noted, Warner advances three claims against the City of Tulsa:  excessive force, intentional infliction of emotional distress and deliberate indifference. Doc. 57 at 60-65.

### A.  Intentional infliction of emotional distress

The Court first dispenses with Warner's intentional infliction of emotional distress claim. "[I]ntentional infliction of emotional distress, by itself, cannot amount to a constitutional violation." *Savage v. Fallin*, Case No. 15-CV-1194-HE, 2020 WL 292186, at *4 (W.D. Okla. Jan.

21, 2020) (unpublished)[3] (quoting *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 678 (6th Cir. 2005)).  To the extent Warner is attempting to hold the City of Tulsa liable for intentional infliction of emotional distress, the Court dismisses this claim because there is no underlying constitutional violation.  *Hinton*, 997 F.2d at 782.

### B.  Excessive force

Turning next to Warner's excessive force claim, Warner alleges he is proceeding under an "official policy" theory of municipal liability.  Doc. 57 at 60.  Warner alleges, "a police sergeant has significant final decision making authority; as he/she is the first (1st) level of supervision in the police chain of command overseeing patrol officers and other personnel." *Id.; see also id.* at 31-32.  Beyond this, Warner's allegations are conclusory. *See id.* at 60-61.  The Court understands Warner's claim to allege the City of Tulsa promulgated a policy making the sergeant on scene the decisionmaker and, pursuant to this policy, the sergeants on scene "inflicted [Warner's] injuries or acquiesced and/or sanctioned it." *Id.* at 60.  Therefore, as Warner sees it, the City of Tulsa is liable.

However, Warner fails to allege Spradlin or Watkins, the sergeants on scene, took any affirmative action pursuant to a City of Tulsa policy which resulted in the excessive force.  Warner explicitly alleges Spradlin stood by and did nothing during his arrest.  Doc. 57 at 33 ("Spradlin's inability and/or failure to act and/or supervise was the proximate cause of all his subordinates actions to inflict severely serious injuries upon [Warner].").  Warner further alleges Watkins engaged in excessive force which "sent a message" to his subordinates that such conduct would be tolerated by the City of Tulsa.  Doc. 57 at 38.  However, Warner does not present any factual allegations that Watkins's conduct was caused by the policy. *See Manning v. City of Tulsa,* Case

---

[3]  The Court cites all unpublished decisions herein as persuasive authority.  Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

No. 17-CV-336-EFM, 2023 WL 11643939, at \*5 (N.D. Okla. Feb. 9, 2023) (unpublished); *see also Manning,* 170 F.4th at 1300. If anything, Watkins's use of force was the result of his own deliberate conduct. *See Manning*, 2023 WL 11643939, at \*5.

Warner may also be proceeding under the theory that Spradlin and Watkins, as final policymakers, ratified their subordinates' decisions. *See Thao*, 159 F.4th at 1227. Warner alleges Spradlin and Watkins "ratifi[ed] all of [their] subordinates unconstitutional acts of excessive force against [Warner]" and "acquies[ced] to [their] subordinates unconstitutional acts of excessive force[.]" Doc. 57 at 33, 39. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Fatally, Warner fails to allege Spradlin or Watkins possessed final authority to establish municipal policy. *See* Doc. 57 at 59-71.[4] Therefore, the Court concludes Warner fails to state a claim against the City of Tulsa based upon excessive force and dismisses the same.

### C. Deliberate indifference

Warner also asserts a "deliberate indifference" claim against the City of Tulsa. Warner points to history, reports and other statistics to support his allegation that the Tulsa police employ excessive force disproportionately to African American individuals compared to Caucasians. *See* Doc. 57 at 62-65. The Court understands this cause of action to be premised on an "informal custom." *Thao*, 159 F.4th at 1227.

---

[4] The City of Tulsa represents, "Title 29, Section 101 of Tulsa Revised Ordinances provides that the Tulsa Police Department 'shall be under the control and authority of the Mayor.' Section 104 then authorizes the Mayor to appoint the Chief of Police, who in turn (pursuant to Section 106) is 'accountable to the Mayor for the promulgation of all orders or regulations made or given to the Department.'" Doc. 61 at 4-5.

"[D]eliberate indifference is germane to claims premised on inadequate supervisory practices (such as claims of inadequate hiring or training) and requires proof that the municipality disregarded a known or obvious risk of constitutional harm." *Thao,* 159 F.4th at 1228 (citing *Collins v. Harker Heights,* 503 U.S. 115, 124 (1992) and *Waller*, 932 F.3d at 1284). "The Supreme Court established this rigorous standard of culpability for claims of inadequate hiring, training, or other supervisory practices because a less stringent standard of fault would result in *de facto respondeat superior* liability on municipalities." *Thao,* 159 F.4th at 1228 (internal quotations and citations omitted). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id*. Deliberate indifference "may be found absent a pattern of unconstitutional behavior" only in "a 'narrow range of circumstances'" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id*. at 1307–08 (quoting *Brown*, 520 U.S. 397, 409 (1997)).

Warner's amended complaint fails to state a claim against the City of Tulsa for deliberate indifference. Warner cites several reports and studies which, he alleges, find that "rate of force" by the Tulsa Police Department against African Americans is higher than that against Caucasians. *See, e.g.,* Doc. 57 at 64. However, the use of force does not necessarily equate to unconstitutional, excessive force. Warner fails to allege the City of Tulsa had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation[.]" *Barney*, 143

F.3d at 1307. Therefore, Warner fails to state a claim for deliberate indifference against the City of Tulsa.

As explained, Warner's claims against the City of Tulsa fail to allege the essential elements of a municipal liability claim, and the Court dismisses the same.

## II.    Warner's claims against the City of Broken Arrow

Warner's claims against the City of Broken Arrow mirror the claims asserted against the City of Tulsa (*see* Doc. 57 at 66) except Warner alleges that during his arrest the City of Broken Arrow "was in agreement with and conceded to the Fugitive Warrant Unit [Tulsa]" to command Warner's arrest. *See id.* at 65-68. Therefore, Warner's position is the City of Broken Arrow, pursuant to a policy, abdicated authority concerning his arrest to the City of Tulsa's on-scene sergeants, and the alleged constitutional violations by the City of Tulsa officers render the City of Broken Arrow liable. *See id.* at 65-69.

Warner's excessive force and intentional infliction of emotional distress claims against the City of Broken Arrow fail to state a claim for the same reasons they did against the City of Tulsa. First, there is no underlying constitutional violation for intentional infliction of emotional distress. *Savage*, 2020 WL 292186, at *4; *Hinton*, 997 F.2d at 782. Second, Warner fails to identify any City of Broken Arrow policy which caused the use of excessive force. Instead, Warner only offers conclusory statements and speculation.

Concerning his deliberate indifference claim, Warner attempts to hinge the City of Broken Arrow's municipal liability upon the alleged conduct of Spradlin and Watkins, Tulsa police sergeants. *See id.* at 70-71. However, Warner does not allege that Spradlin and Watkins possessed final authority to establish City of Broken Arrow policy nor that any action was ordered pursuant to a City of Broken Arrow policy. *Pembaur*, 475 U.S. at 48. Nor, to the extent Warner is

proceeding under a theory of informal custom, does he adequately allege the City of Broken Arrow was on notice "that its action or failure to act [was] substantially certain to result in a constitutional violation[.]" *Barney*, 143 F.3d at 1307. In all, Warner's claims against the City of Broken Arrow fail to allege the essential elements of a municipal liability claim, and the Court dismisses these claims.

### III.    Conclusion

Based on the foregoing, the Court concludes that the Cities' motions to dismiss shall be granted, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.

**IT IS THEREFORE ORDERED** that the City of Tulsa's motion to dismiss (Doc. 61) is **granted**.

**IT IS FURTHER ORDERED** that the City of Broken Arrow's motion to dismiss (Doc. 62) is **granted**.

**IT IS FURTHER ORDERED** that the amended complaint is **dismissed, in part,** as to Warner's municipal liability claims against the City of Tulsa and the City of Broken Arrow.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **terminate** the City of Tulsa and the City of Broken Arrow as party defendants.

**DATED** this 21st day of July, 2026.

**GREGORY K. FRIZZELL**
**UNITED STATES DISTRICT JUDGE**

9